IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ASHLEY FOSTER, individually
and on behalf of other similarly
situated persons,

        Plaintiff,

v.

ROBERT BROGDEN'S OLATHE
BUICK GMC, INC.,

        Defendant.

Case No. 17-2095-DDC-JPO

## MEMORANDUM AND ORDER

Plaintiff Ashley Foster, individually and on behalf of other similarly situated persons, filed this lawsuit against defendant Robert Brogden's Olathe Buick GMC, Inc. She alleges that defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Kansas Wage Payment Act ("KWPA"), Kan. Stat. Ann. § 44-312 *et seq.* Doc. 1. The parties have agreed on a class-wide settlement.[1] They now ask the court to grant preliminary approval of their collective action settlement. Doc. 37. For reasons explained below, the court respectfully declines the parties' request.

**I.    Background**

Plaintiff alleges that defendant failed to pay her and the putative class members fully and fairly because of an automatic pay deduction protocol. Plaintiff says this pay deduction protocol

---

[1] Plaintiff also alleges, on behalf of herself only, that defendant violated the FLSA by terminating her employment as retaliation for engaging in protected activity. The parties' settlement does not include this claim; it remains pending.

deducted 30 minutes from every hourly employee's daily pay record even if the employee did not take a lunch break. Defendant denies these allegations.

The court assigned this matter to mediation, and on November 21, 2017, the parties engaged in that process before Mr. Joseph Eischens. The parties reached an agreement in principle on the FLSA collective action claim at mediation. And plaintiff stipulated to dismiss the KWPA claim without prejudice. On January 28, 2018, the parties reached a proposed settlement agreement.

The settlement agreement proposes that:

1. Defendant will pay $12,000 plus the costs of mediation into a settlement fund to be held in escrow by the settlement administrator for payment to the putative class members who opt-in.
2. The payments to class members will be based on automatic deductions for lunch breaks assessed against each class member from March 1–December 31, 2016.
3. Defendant will not discharge or discriminate against any current or former employee who is a member of the settlement class.
4. At least 10 days before the final fairness hearing, plaintiffs' counsel will apply to the court for an attorneys' fee award to be paid from and not to exceed one-third of the settlement payment. Also, plaintiffs' counsel will ask the court to order reimbursement for their reasonable out-of-pocket litigation costs and expenses.

Now, the parties seek the court's preliminary approval of their collective action settlement.

**II.    Legal Standard**

The parties to an FLSA action must present a putative settlement of those claims to the court for review, and the court must determine whether the settlement is fair and reasonable.

2

*Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Also, when parties settle FLSA claims before the court has made a final certification ruling, the court must make some final class certification findings before it can approve an FLSA collective action settlement. *Id.* (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

## III.     Analysis

In the following three sections, the court discusses collective action certification, the fairness and reasonableness of the proposed settlement agreement, and the fairness and reasonableness of the proposed service payment to plaintiff. Ultimately, the parties have presented the court insufficient evidence to make rulings on these issues so, on the current record, the court cannot preliminarily approve the parties' collective action settlement.

### A.     FLSA Collective Action Certification

Under § 216(b) of the FLSA, a group of employees may bring claims against their employer on behalf of employees who are "similarly situated" to plaintiffs. 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* In other words, putative class members who wish to join this lawsuit must affirmatively opt-in.

3

Section 216(b) does not define the term "similarly situated." But, the Tenth Circuit has approved a two-step approach for determining whether plaintiffs in a proposed opt-in collective action are "similarly situated" for purposes of § 216(b). *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court makes an initial "notice stage" determination about the similarly-situated requirement. *Id.* at 1102. "That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members." *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012). The court must certify the case conditionally as a collective action before plaintiffs may send notice to putative class members of their right to opt-in. *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB, 2014 WL 2885363, at *2 (D. Kan. June 25, 2014).

For conditional certification at the notice stage, courts "'require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). As a result, the standard for certification at the notice stage is a lenient one and typically results in certification. *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. at 576.

The second stage, or final certification, comes after the parties have completed discovery. *Thiessen*, 267 F.3d at 1102–03; *Folger*, 2014 WL 2885363, at *2. At this stage, courts apply a stricter standard to the similarly-situated requirement. *Thiessen*, 267 F.3d at 1102–03. During final certification, the court considers: "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *4 (D. Kan. May 17, 2012) (citing *Thiessen*, 267 F.3d at

1103) (other citation omitted). Importantly, before the court can approve a proposed FLSA collective action settlement, it must make a final certification ruling. *Barbosa*, 2015 WL 4920292, at *3 (citing *McCaffrey*, 2011 WL 32436, at *3).

Here, the parties do not request a final certification ruling, and they do not present sufficient evidence to allow the court to make such a decision. This omission prevents the court from approving the proposed class action settlement. *See Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *3 (D. Kan. Jan. 19, 2012) [hereinafter *Gambrell I*].

The parties do ask, however, for conditional certification. To decide this kind of certification, the parties need only make "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *McCaffrey*, 2011 WL 32436, at *2 (quoting *Thiessen*, 267 F.3d at 1102 (citation omitted)). Here, the parties stipulate that the putative class members were:

> [a]ll hourly employees subject to Defendant's automatic pay deduction protocol that deducted 30 minutes of time from the employees' daily pay record even when lunch breaks were not taken for the period from March 1–December 31, 2016.

Doc. 37 at 2. In other words, the parties stipulate that all the putative class members were victims of defendant's automatic pay deduction protocol.

Given the lower standard for "notice stage" certification, the court concludes that the parties have satisfied this preliminary requirement. And so the court grants the parties conditional class certification. But before the court can approve the parties' collective action settlement, the parties must present facts capable of supporting final certification under *Thiessen*'s three factors.

### B. Proposed Settlement Agreement

When parties settle FLSA claims, they must present the settlement to the court and it must decide whether the settlement is fair and reasonable. *Tommey v. Computer Sciences Corp.*,

No. 11-CV-02214-EFM, 2015 WL 1623025, at *1 (D. Kan. April 13, 2015); *see also Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *2 (D. Kan. Oct. 29, 2012) [hereinafter *Gambrell II*] (explaining that "[w]hen employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable" (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). To approve an FLSA settlement, the court must determine whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees. *Barbosa*, 2015 WL 4920292, at *5 (citing *McCaffrey*, 2011 WL 32436, at *2). The next three subsections discuss why the parties' submissions have failed to establish these requirements here.

### 1. Bona Fide Dispute

To demonstrate a bona fide dispute, the parties should provide: "(1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *McCaffrey*, 2011 WL 32436, at *4.

Here, the parties have described the nature of the dispute generally. But they have not provided any of the information required by the other four factors. Thus, the court cannot find that a bona fide dispute exists.

## 2. Fair and Equitable

To determine whether the proposed settlement is fair and equitable, the court considers the factors specified in Fed. R. Civ. P. 23(e). *Gambrell II*, 2012 WL 5306273, at *4. The factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *McCaffrey*, 2011 WL 32436, at *5); *see also Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015). These factors do not exclude consideration of other appropriate circumstances. *Id.* (citing *McCaffrey*, 2011 WL 32436, at *5). The court also must consider "factors relevant to history and policy of the FLSA." *Id.* (citation omitted).

The relevant factors do not commission the court to "'conduct a foray into the wilderness in search of evidence that might undermine the conclusion that the settlement is fair.'" *Jackson*, 2015 WL 751835, at *2 (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)). "But the court also may not 'rely solely upon the assertions of the proponents of the settlement [about] what the evidence shows.'" *Id.* (quoting *Gottlieb*, 11 F.3d at 1015). Instead, the court must undertake "an independent analysis of 'the evidence before it' to reach its conclusion." *Id.* (quoting *Gottlieb*, 11 F.3d at 1015). "The proponents of the settlement bear the burden to provide sufficient evidence to enable the court to conclude that the settlement is fair." *Id.* (citing *Gottlieb*, 11 F.3d at 1015). While the parties here have provided some evidence about the four required factors, they have not satisfied all of them.

7

*First*, the parties assert that the proposed settlement was fairly and honestly negotiated. In *Jackson*, our court determined a proposed settlement was fair and honestly negotiated when "the agreement represented the cooperative and good faith result" of arm's-length negotiation by skilled counsel. *Id.* The court found: counsel for both parties were familiar with the specific legal issues in the case; the parties had engaged in a time-consuming discovery process; the parties aggressively litigated the issue of certification; and they undertook several mediation sessions. In sum, *Jackson* concluded, "the Agreement [was] the product, not of collusion or other impropriety, but of both parties' deliberate consideration of the action's merits and uncertainties." *Id.*

The circumstances presented in this case match those presented in *Jackson*. The parties participated in collective action discovery and mediation before a skilled mediator. Throughout these procedures, experienced counsel represented both parties. And the mediation produced a putative settlement. The court thus can find that the proposed settlement agreement is a product of "deliberate consideration of the action's merits and uncertainties." *See Jackson*, 2015 WL 751835, at *2.

*Second*, the parties say that "serious questions of law and fact drove this settlement." Doc. 37 at 10. But they have provided no details about these questions of law or fact. The parties' showing, so far, does not discharge the serious questions of law or fact requirement.

*Third*, the parties agree that the settlement "represents an excellent recovery for the plaintiff class." *Id.* But without details about the questions of law and fact, the court cannot evaluate whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

8

*Fourth*, the parties agree that the proposed settlement is fair and reasonable. While the court should "hesitate to substitute its own judgment for that of counsel," *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198-KHV, 2017 WL 364582, at *8 (D. Kan. Jan. 25, 2017) (citations omitted), courts nevertheless must consider whether the parties believe the settlement is fair and reasonable, *Gambrell II*, 2012 WL 5306273, at *4. Here, the parties "stipulate that they both believe the settlement is fair and reasonable." Doc. 37 at 10.

In addition to these factors, the parties also assert that class counsel and the class representative are adequate here. "Although the Tenth Circuit has held that Section 216(b) does not incorporate the Rule 23 requirements of numerosity, commonality, typicality and adequacy of representation, the adequacy of class counsel and class representatives is a relevant consideration because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented." *McCaffrey*, 2011 WL 32436, at *5 (first citing *Thiessen*, 267 F.3d at 1103; then citing *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004)) (other citation omitted). The parties assert that plaintiff is a former employee of defendant who comes within the definition of the putative class. They also assert that plaintiff has no conflict of interest with the putative class members. The court has no concerns about plaintiff's adequacy as a class representative. Likewise, the court has no concerns about class counsel's adequacy. They have over 40 years of combined practice in both federal and state class action litigation.

In sum, the court must undertake "an independent analysis of 'the evidence before it' to reach its conclusion." *Jackson*, 2015 WL 751835, at *2 (quoting *Gottlieb*, 11 F.3d at 1015). Unfortunately, the parties have not provided the court sufficient evidence to determine whether the proposed settlement satisfies the second and third factors. On the current record, the court cannot conclude whether the proposed settlement is fair and equitable.

### 3. Attorneys' Fees

The FLSA requires the parties submitting a settlement agreement to include an award of reasonable attorneys' fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2 (citing *Lee v. The Timberland Co.*, No. C 07-2367-JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008)). The court has discretion to determine the amount and reasonableness of the fee, but, under the FLSA, a fee award is mandatory. *Barbosa*, 2015 WL 4920292, at *4 (citations omitted).

Because the parties have failed to show that a bona fide dispute exists and that the proposed settlement award is fair and equitable, the request for attorneys' fees and costs is premature. Also, plaintiff's counsel does not request attorneys' fees and costs at this time. The court declines to analyze this element of the agreement at this time.

Finally, the court notes that the proposed settlement agreement requires plaintiff's counsel to submit a request for attorneys' fees 10 days before the final fairness hearing. While this approach isn't forbidden, it will complicate the court's analysis. The court encourages the parties to include a request for attorneys' fees and costs with any other future request for court approval of a proposed settlement agreement.

### C. Proposed Service Payment

The court also must examine any proposed service payments to determine whether they are fair and reasonable. *See Tommey*, 2015 WL 1623025, at *2–3; *Grove*, 2012 WL 1789100, at *7 (citations omitted). Here, the parties request a service payment of $1,200 to plaintiff. But she provides little information about the nature of her assistance to counsel during the litigation and no estimate of the number of hours she devoted to the case.

Our court evaluates the reasonableness of a requested service award by considering whether the proposed award adequately reflects the time that the designated recipient spent working on the lawsuit. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing requested service awards to each of the four named plaintiffs from $15,000 to $5,000, even though the total settlement exceeded $25 million, because the $5,000 award adequately compensated each plaintiff for the 80 hours of time that each had devoted, on average, to the lawsuit); *see also Barbosa*, 2015 WL 4920292, at *6 (rejecting proposed service award of $3,500 to each of two named plaintiffs who spent 24.1 hours and 9.6 hours on the case and concluding instead that $20 per hour for the time plaintiffs spent on the case was a fair and reasonable service award); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (rejecting $10,000 proposed service award to the named plaintiff in an $8.7 million settlement because plaintiff failed to provide specific details about the amount of time she invested in the suit and awarding a $5,000 service award instead).

Perhaps plaintiff has the wherewithal to convince the court that she deserves a $1,200 service award. But so far, the court lacks any information about the time plaintiff has devoted to the case. Given that missing information and the legal standard that the court must apply, the court cannot preliminarily approve this aspect of the proposed settlement.

**IV.     Additional Requests**

In addition to requesting preliminary approval for their proposed settlement, the parties make several other requests.

*First*, the parties ask the court to approve the form, contents, and method of notice, approve the settlement administrator, and set deadlines for the continuation of the case. The proposed settlement agreement describes the procedure for notice in this fashion:

> 9. **Class Notice, FLSA Opt-in, and Objections to the Settlement.** Within ten days (10) days of the preliminary approval of this Agreement by the Court, Defendant will provide the Administrator, in addition to that information set out above, a list, in machine readable agreeable format, of the names, last known addresses, email addresses, telephone numbers, dates of birth, and social security numbers of the Plaintiff Class Members, to the extent known. Within twenty (20) days of Preliminary Approval of this Settlement, the Claims Administrator shall mail Notice of this Settlement to all putative Plaintiff Class Members by first-class mail in the form approved by the Court the Notice of Proposed Settlement of Class Action and Settlement Hearing ("Plaintiff Class Notice"). The mailing of the Plaintiff Class Notice will commence at the beginning of the twenty-one (21) day opt-in period, and any opt-ins must be postmarked or received by the Settlement Administrator no later than twenty-one (21) days after the Plaintiff Class Notice is mailed. The Plaintiff Class Notice will be approved by the Court and shall contain a description of the case and the allocation procedures and shall state that Defendant disputes all liability in the Action. The Plaintiff Class Notice will include, among other information related to this proposed Settlement: (a) the estimated amount that such Class Member will receive; (b) the estimated proposed amount for Plaintiffs' attorneys' fees and costs of litigation; (c) the proposed amount for the service or incentive award to the named representative plaintiff; (d) the proposed payment to the Class Administrator, and; (e) that each Plaintiff Class Member is advised to consult with her or her own tax advisor concerning the tax consequences-if any-of the settlement to him or her. The Plaintiff Class Notice will state that both Parties support the settlement and encourage participation in the settlement and that Defendant will not retaliate against any Plaintiff Class Member for participating in the settlement. Neither named Plaintiff nor Defendant nor their counsel will encourage any Plaintiff Class Member to opt-in or opt-out of the settlement. The Plaintiff Class Notice shall be provided to the Plaintiff Class within the timeframe set out above by:
>
>> a. A Plaintiff Class Notice mailed first class to each Plaintiff Class Member by United States Postal Service ("USPS') at his/her last known address or such other more current address as determined by the Plaintiff Class Administrator with notice of the terms of the Agreement and its legal effect, the date, time, and place of the Final Approval and Fairness Hearing, the Plaintiff Class Member's right to object and appear at the hearing individually or through counsel, and the procedure for opting-in, opting-out or filing an objection to this Agreement. Provision of such information may additionally be made by electronic mail and/or text, or other form of

electronic communication, which forms of communication may be used throughout the Notice process.

b. As to any Plaintiff Class Notice that is Returned Undeliverable Mail ("RUM"), within ten (10) days of receipt of such RUM notice, the Settlement Administrator shall update that Plaintiff Class Member's address by using the USPS National Change of Address List and the Defendant shall forthwith provide to the Settlement Administrator for all such Plaintiff Class Members any additional contact information that the Defendant possesses in its personnel files, including but not limited to email, text and emergency contact information. The Settlement Administrator shall re-mail the Plaintiff Class Notice to such person only once via USPS first class mail or otherwise attempt to contact such Plaintiff Class Members and provide Plaintiff Class Notice via email and text. No further address checking, re-mailing or contacting Plaintiff Class Members shall be required or performed by the Class Administrator.

c. Any Plaintiff Class Member wishing to object to the Court's approval of this Settlement shall be required to follow the procedures set forth in the Plaintiff Class Notice, including filing and serving any objections on Plaintiff's Counsel no later than twenty-one (21) days from the original mailing of the Plaintiff Class Notice. A Plaintiff Class Member who has submitted an opt-out request may not submit any objections to the Settlement. Any Plaintiff Class Member who fails to file a timely written objection shall be foreclosed from objecting to this Settlement unless otherwise ordered by the Court. Counsel for the Parties may file a response to objections filed by objecting Plaintiff Class Members as part of or contemporaneous with Plaintiff's application for final settlement approval. Plaintiff's Counsel may communicate with Plaintiff Class Members regarding their participation in the class and/or their objections and may advise the Court of any Plaintiff Class Members who have communicated that they wish to withdraw their objections.

Doc. 37-1 at 10–13.

This court has found notice sufficient when it explained:

"(1) the terms of the settlement; (2) how to participate in the settlement; (3) the individual amount that the individual plaintiff would receive; (4) the tax consequences of the amount received; (5) how to object to the settlement; and (6) how to contact plaintiffs' counsel should the individual have questions or seek additional information."

*Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 1403730, at *8 (D. Kan. Apr. 11, 2016). The proposed notice provided by the parties here includes all of these

requirements.  *See* Doc. 37-3.  Also, in *Koehler*, the court found that notice by mail with email and phone call follow-ups was sufficient.  2016 WL 1403730, at *8.  Here, the parties propose to distribute the notice by certified mail and use email and texting as necessary for additional communication.  The court finds that the parties' proposed form, contents, and method of notice are sufficient and thus approves their proposed notice.

*Next*, the parties ask the court to approve Roberta Ranes, a paralegal at plaintiff's counsel's law firm, as the settlement administrator.  The parties report that Ms. Ranes has served in this role before and that her services will be about 40% less than a third-party administrator.  *See* Doc. 32 at 11–12.  They also minimize any concerns about Ms. Ranes's affiliation with plaintiff's counsel because she has agreed to serve as a fiduciary for all parties and class members.  Also, plaintiff and plaintiff's counsel have agreed to waive any claim of confidentiality over Ms. Ranes's duties as settlement administrator in this case, if she is selected.

This request is a novel one for our court.  The parties report that other courts have approved Ms. Ranes for the same role in other class settlements, but don't provide specific information about that service.  The parties' motion does not cite other federal court cases that have approved a paralegal employed by counsel of record for a party.  The court understands why, as its own research has generated meager returns.  But at least one court has approved this approach.  *See Guzman v. The Consumer Law Grp., PA*, No. 1:11-CV-00187-JRH, 2016 WL 2755915 (S.D. Ga. May 11, 2016); *Morefield v. NoteWorld, LLC*, Nos. 1:10-CV-00117, 1:11-CV-00029, 2012 WL 1355573 (S.D. Ga. Apr. 18, 2012).

Given the relative simplicity of the class membership here, the total monetary value of this proposed settlement, and the parties' report that using Ms. Ranes will reduce the economic burden of administration by 40%, the court approves this component of the proposed settlement.

14

While it likely would not approve this approach for every settlement, the court finds this approach fair and adequate for this one.

*Last*, the parties ask the court to set future deadlines. Given the rulings in this Order, the court finds it is premature to set future deadlines save for one—the parties must notify the court **on or before August 31, 2018** of their intention either to: (1) file a revised settlement agreement and supporting documentation addressing the shortcomings in this Order; or (2) abandon the proposed settlement and proceed to litigate this dispute.

## V.  Conclusion

In sum, the court conditionally certifies the collection action, approves the proposed notice, and approves the settlement administrator. Otherwise, the parties have failed to provide sufficient information for the court to make a final certification ruling, determine whether a bona fide dispute exists, determine whether the proposed settlement is fair and equitable, make an attorneys' fee award, or determine whether the proposed service payment to plaintiff is fair and equitable. The court thus denies the portion of the motion seeking preliminary approval of proposed collective action settlement under 29 U.S.C. § 216(b).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion for Preliminary Approval of Proposed Collective Action Settlement under 29 U.S.C. § 216(b) (Doc. 37) is granted in part and denied in part, without prejudice to refiling, as explained fully in this Order.

**IT IS FURTHER ORDERED THAT** the parties must notify the court **on or before August 31, 2018** of their intention either to: (1) file a revised settlement agreement and supporting documentation considering the rulings in this Order; or (2) abandon settlement and proceed to litigate this dispute. If the parties wish to file a revised settlement agreement and

supporting documentation, they may include with it any proposed deadlines for the continuation of this cause of action.

**IT IS SO ORDERED.**

**Dated this 31st day of July, 2018, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**